UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DURHAM GEO-ENTERPRISES, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO. 1:16-cv-00048-AT |
| JOSHUA TREWITZ and INSTRUMENT INTEGRATION & MONITORING, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANT JOSHUA TREWITZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Defendant Joshua Trewitz, pursuant to LR 7.1(A)(1), hereby files this Memorandum of Law in support of his Motion for Partial Judgment on the Pleadings, and shows the Court as follows:

## FACTUAL BACKGROUND

Mr. Trewitz worked as a sales manager for Durham Geo Enterprises, Inc. ("Durham Geo") from April, 2007, until November, 2015. *See* Amended Verified Complaint, [Doc. 4], ¶¶ 14, 30. Over the course of his employment, Mr. Trewitz

1

signed two separate agreements containing non-solicitation and non-disclosure provisions. *Id.*, ¶¶ 15-29.

<u>*The Sales Employment Agreement*</u>

First, Mr. Trewitz signed the Sales Employment Agreement on April 11, 2007. *See* Sales Employment Agreement, a true and accurate copy of which is attached to the Amended Verified Complaint as Exhibit 1; Doc. 4, ¶ 15.

The Sales Employment Agreement includes a lengthy paragraph entitled "<u>Non-competition.</u>" that first sets out Durham Geo's business: ". . . [Durham Geo] is engaged in the business of developing, designing, marketing and selling geotechnical/geoenvironmental instruments and equipment throughout the World." *Id.*, ¶ 5. It then contains the following non-solicitation provision:

> Accordingly, you agree that during the term of your employment and for a period of two (2) years following termination of your employment for any reason, you will not, on your own behalf or in the service of or on behalf of others, call on, solicit or take away as a client or customer, or attempt to call on, solicit or take away as a client or customer, any individual, partnership, corporation, limited liability company, association or other entity that was a client, customer of [Durham Geo] and was serviced by you or under your direct supervision or with whom you had material contact during the last twelve months of your employment with [Durham Geo], for the purpose of selling Products competitive with those offered by [Durham Geo].

*The Employee Nondisclosure Agreement*

Second, on September 16, 2009, and in consideration for his continued employment, Mr. Trewitz signed the Employee Nondisclosure and Developments Agreement ("Employee Nondisclosure Agreement"). *See* Employee Nondisclosure Agreement, a true and accurate copy of which is attached to the Amended Verified Complaint as Exhibit 2; Doc. 4, ¶ 22.

> The Employee Nondisclosure Agreement states, in part, that Mr. Trewitz
>
> will not at any time, whether during or after the termination of my employment . . . reveal to any person or entity any proprietary information of [Durham Geo], which includes, without limitation, trade secrets, product ideas, inventions, designs, configurations, processes, techniques, formulas, software, improvements, inventions, data, know-how . . . except as may be required in the ordinary course of performing my duties as an employee of [Durham Geo].

*Id.*, ¶ 1. It further requires that Mr. Trewitz "shall not, after the termination of my employment, use or permit to be used any notes, memoranda, reports, lists . . . or other materials of any nature relating to any matter within the scope of the business of [Durham Geo]." *Id.*, ¶ 3. These restrictions are without duration and extend in perpetuity. *Id.* Finally, the Employee Nondisclosure Agreement also contains multiple provisions that purport to give Durham Geo ownership rights over defined "Developments" that occurred during Mr. Trewitz's employment. *Id.*, ¶¶ 4-5.

3

### *Mr. Trewitz's Installation and Field Services Work with Durham Geo's Knowledge and Permission*

With Durham Geo's knowledge and permission, Mr. Trewitz began to perform installation and field services work on the side. *See* Second Amended Verified Answer, Defenses, and Counterclaims of Joshua Trewitz [Doc. 33], ¶ 1. Because Mr. Trewitz was located in Pennsylvania during his entire employment with Durham Geo, he provided installation and field monitoring services only to construction projects in Pennsylvania for which Durham Geo provided the geotechnical monitoring equipment. *Id.*, ¶ 4, 52, 54, 58, 65, 67, 71.

Eventually, he performed this installation and field services monitoring through a company, Instrument Integration & Monitoring, LLC ("II&M"), which he formed with his wife in 2011. *Id.*, ¶¶ 4.  II&M performs installation and field services work for projects that Mr. Trewitz became acquainted with before and after his employment started with Durham Geo. *Id.*, ¶ 52. Neither Mr. Trewitz nor II&M sells, nor has either ever sold, any geotechnical or structural instrumentation and equipment. *Id.*, ¶¶ 1, 38, 49, 50.

Durham Geo knew that Mr. Trewitz performed installation and field services work on the side. *Id.*, ¶¶ 1, 52, 53, 54, 58, 61, 63, 65, 67, 69, 70. It knew that Mr. Trewitz received compensation for his installation and field services work. *Id.* And

it benefited from Mr. Trewitz's installation and field services work through the continued sale of products that Defendant Trewitz installed on his own. *Id.* Specifically, the following individuals knew that Defendant Trewitz performed installation work outside of his employment with Durham Geo:

    a.) John Pecha, former Central and U.S. Sales Manager;

    b.) Bob Beyer, former Environmental Sales Manager; and,

    c.) Bill Keegan, former Technical Sales and Materials Testing; and

    d.) Ivan Varlamoff, former Global Sales Manager for Durham Geo.

*Id.* And with these individuals' knowledge and permission, Defendant Trewitz continued his installation and field services work until Durham Geo terminated his employment. *Id.*

On November 9, 2015, Durham Geo terminated Mr. Trewitz's employment while he was recuperating from back surgery. *Id.*, ¶ 30. After his termination, Mr. Trewitz returned any and all hardware and equipment Durham Geo had sent him over the course of his employment. *Id.*, ¶ 85.

## ARGUMENT AND CITATIONS OF AUTHORITY

Mr. Trewitz is entitled to partial judgment on the pleadings on all claims arising from the Sales Employment Agreement and the Employee Nondisclosure Agreement.

"Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Horsley v. Rivera*, 292 F.3d 695, 700 (11th Cir. 2002). On a motion for judgment on the pleadings, the court accepts factual allegations in the complaint as true and construes all reasonable factual inferences in the plaintiff's favor. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Long v. Fulton Cnty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011). A court must grant judgment on the pleadings when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Scott v. Taylor,* 405 F.3d 1251, 1253 (11th Cir. 2005).

The court may consider a written instrument that is an exhibit to the pleadings without converting the motion into one for summary judgment. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (noting "Rule 10(c) provides that '[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.' It would seem to follow that if an attachment to an answer is a 'written instrument,' it is part of the pleadings and can be considered on a Rule 12(c) motion

for judgment on the pleadings without the motion being converted to one for summary judgment.").

**I.    Defendant Trewitz is entitled to judgment on the pleadings for all claims arising from the Sales Employment Agreement because Mr. Trewitz's activities did not breach the Agreement.  In the alternative, the Agreement is unreasonably overbroad and void.**

Durham Geo alleges that Mr. Trewitz committed "various breaches of his non-compete and non-disclosure obligations to Durham Geo." (Amended Verified Complaint, ¶ 1). Yet Durham Geo has failed to provide sufficient, non-conclusory factual allegations to support its claim that Mr. Trewitz breached the Sales Employment Agreement. In the alternative, if the Court finds that Mr. Trewitz's installation and field monitoring services fall within the restrictive covenant contained in the Sales Employment Agreement, then the agreement itself is unreasonably overbroad and void as written.

A. Mr. Trewitz's installation work does not breach the Sales Employment Agreement, and Durham Geo has failed to allege sufficient facts to support such a claim.

Mr. Trewitz's installation and field monitoring services do not breach the Sales Employment Agreement. First, Mr. Trewitz's installation and field monitoring services do not violate the plain terms of the non-solicitation provision contained in the Sales Employment Agreement, and Durham Geo has not alleged sufficient facts that Mr. Trewitz has ever solicited individuals or entities for the purpose of selling

products competitive with Durham Geo. Second, Durham Geo's knowledge and permission of Mr. Trewitz's installation and field monitoring services, from which Durham Geo benefited, establishes a mutual departure from any contract terms that purport to restrict such activity.

> i. *Mr. Trewitz's installation and field monitoring services do not violate any restrictive covenant, and Durham Geo has failed to allege sufficient facts that Mr. Trewitz violated any restrictive covenant.*

The restrictive covenant contained in the Sales Employment Agreement prevents Mr. Trewitz from soliciting certain individuals or entities "for the purpose of selling Products competitive with those offered by [Durham Geo]." *See* Doc. 4, Exhibit 1, ¶ 5. Yet Durham Geo fails to allege sufficient facts to support a finding that Mr. Trewitz has ever engaged in that prohibited activity.

Since his termination, Mr. Trewitz has only performed installation and field monitoring services and has not sold any products competitive with Durham Geo. *See supra*, p. 5-6. The restrictive covenant in the Sales Employment Agreement does not prevent Mr. Trewitz from performing installation and field monitoring services. Therefore, Mr. Trewitz's installation and field monitoring services does not breach the restrictive covenant in the Sales Employment Agreement.

Rather, in order to state a claim for breach of the restrictive covenant, Durham Geo must provide "well-pleaded factual allegations"—not wholly conclusory

allegations—that Mr. Trewitz solicited prohibited individuals or entities "for the purpose of selling Products competitive with those offered by [Durham Geo]." *See Roma Outdoor Creations, Inc. v. City of Cumming, Ga.*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008)("A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss."*).* [1] Durham Geo has failed to do so.

The Amended Verified Complaint concludes in many places that Mr. Trewitz and/or II&M sold, and continues to sell, geotechnical instruments and equipment. *See, e.g.,* Amended Verified Complaint, ¶¶ 7, 38, 61, 69. Yet the only facts Durham Geo provides to support each of these conclusory allegations are invoices where the products at issue were Durham Geo products sold by Durham Geo, not products competitive with those offered by Durham Geo. Thus, even accepting Durham Geo's

---

[1] Durham Geo's complaint "must contain sufficient factual matter to state a claim for relief that is 'plausible on its face.' *JP Morgan Chase Bank, N.A. v. Sampson*, 2012 WL 949698, at *2-3 (N.D. Ga. Mar. 20, 2012) (quoting *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1196 (11th Cir. 2010)). To be 'plausible on its face,' the complaint must have enough 'factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, factual allegations are accepted as true, but legal conclusions are not. *Id.; see also Plumbers & Steamfitters Local 150 Pension Fund v. Muns Welding & Mech., Inc.*, 2015 WL 6680878, at *2 (S.D. Ga. Oct. 30, 2015).

conclusory allegations that Mr. Trewitz and II&M sold any products—for which there are no well-pleaded factual allegations—Durham Geo has not alleged that those products were competitive with those offered by Durham Geo. Nor has Durham Geo provided any well-pleaded factual allegations that Mr. Trewitz *solicited* (as opposed to merely accepted business from) individuals or entities prohibited by the restrictive covenant.

In short, after setting aside all conclusory allegations in the Amended Verified Complaint, and considering only those "well-pleaded factual allegations," Durham Geo has failed to allege sufficient facts that plausibly give rise to an entitlement to relief under the restrictive covenant in the Sales Employment Agreement. For that reason, Mr. Trewitz is entitled to judgment on the pleadings on all claims alleging that Mr. Trewitz breached the restrictive covenant in the Sales Employment Agreement.

> ii. *Durham Geo's knowledge and permission of Mr. Trewitz's installation and field monitoring services establishes a mutual departure from the Sales Employment Agreement.*

Durham Geo and Mr. Trewitz also departed from any terms of the Sales Employment Agreement that purport to prevent Mr. Trewitz's installation and field monitoring services work. This includes any requirement that Mr. Trewitz's

installation and field monitoring services be approved in writing. O.C.G.A. § 13-4-4 states:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

Here, Mr. Trewitz's Second Amended Verified Answer, Defenses, and Counterclaims establishes such a mutual departure.

Durham Geo knew that Mr. Trewitz performed installation and field services work on the side. *See* Second Amended Verified Answer, Defenses, and Counterclaims, ¶¶ 1, 52, 53, 54, 58, 61, 63, 65, 67, 69, 70. It knew that Mr. Trewitz received compensation for his installation and field services work apart from Durham Geo. *Id.* And it benefited from Mr. Trewitz's installation and field services work through the continued sale of products that Defendant Trewitz installed on his own. *Id.* Specifically, the following individuals knew that Defendant Trewitz performed installation work outside of his employment with Durham Geo:

a.) John Pecha, former Central and U.S. Sales Manager;

b.) Bob Beyer, former Environmental Sales Manager; and,

c.) Bill Keegan, former Technical Sales and Materials Testing; and

d.) Ivan Varlamoff, former Global Sales Manager for Durham Geo.

11

*Id.* And with these individuals' knowledge and permission, Defendant Trewitz continued his installation and field services work—and Durham Geo continued to benefit from the same—until Durham Geo terminated his employment. *Id.* Indeed, the invoices attached as exhibits to Durham Geo's Amended Verified Complaint establish that Durham Geo benefited from Mr. Trewitz's work.

These facts as pleaded establish that Durham Geo and Mr. Trewitz departed from any terms of the Sales Employment Agreement that purported to prevent or restrict Mr. Trewitz's installation and field services work.  They establish that Durham Geo received consideration for, and benefited from, Mr. Trewitz's installation and field monitoring services, to the extent that Mr. Trewitz installed products Durham Geo sold. Therefore, any terms purporting to restrict Mr. Trewitz's activities were "suspended by the departure until [reasonable notice of an intention to rely on the exact terms of the agreement]." See O.C.G.A. § 13-4-4. Durham Geo cannot now claim that Mr. Trewitz's activities violated the terms of the Sales Employment Agreement when it knew, permitted, and benefitted from those activities.

B.  In the alternative, the Sales Employment Agreement is unreasonably overbroad and void under Georgia law.

If the Court finds that the restrictive covenant in the Sales Employment Agreement prevents Mr. Trewitz's installation and field monitoring services, then

the covenant is unreasonably overbroad and void because it restricts more activities than Durham Geo has an interest in protecting.

Restrictive covenants against competition in employment agreements are in partial restraint of trade and, therefore, are enforced only where the restrictions are "strictly limited, both in time and geographical effect, and when the restrictions are otherwise reasonable, considering the business interests of the employer needing protection and the effect of the restrictions on the employee." *Sanford v. RDA Consultants, Ltd.,* 244 Ga. App. 308, 310, 535 S.E.2d 321 (2000).[2]

Georgia courts have traditionally applied close scrutiny to employment contracts containing restrictive covenants and have upheld them only when the covenant is strictly limited in time, territorial effect, and activities prohibited." *Id.* (citing *Palmer & Cay of Ga. v. Lockton Cos.,* 284 Ga. App. 196, 198, 643 S.E.2d 746 (2007)). Where a restrictive covenant seeks to prohibit post-termination business activities in which a former employee did not engage and otherwise is unrelated to the former employee's business, the restriction is considered

---

[2] Because the Sales Employment Agreement and the Employee Nondisclosure Agreement were signed before the recent amendments to Georgia law governing restrictive covenants, the Court must apply Georgia law as it existed before those amendments. *See Cox v. Altus Healthcare & Hospice, Inc.*, 308 Ga. App. 28, 30, 706 S.E.2d 660, 663-64 (2011).

unreasonable. *Matthew Focht Enterprises, Inc. v. Lepore*, 2013 WL 4806938, at 5 (N.D. Ga. Sept. 9, 2013) (citing *W.R. Grace & Co., Dearborn Div. v. Mouyal,* 262 Ga. 464, 422 S.E.2d 529 (1992)).

A single unreasonable provision in a restrictive covenant will void the entire contract, and courts will not "blue line" the covenant to salvage any non-offending parts. *See Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1377-78 (N.D. Ga. 2001) (Citations omitted). Whether the restraint imposed by the employment contract is reasonable is a question of law for determination by the court, which considers the nature and extent of the trade or business, the situation of the parties, and all the other circumstances. *Fine v. Commc'n Trends, Inc.*, 305 Ga. App. 298, 305, 699 S.E.2d 623, 631 (2010).

Here, if the Court determines that Mr. Trewitz's installation and field monitoring services plausibly falls within the scope of the restrictive covenant, then the restrictive covenant is unreasonably overbroad and the entire Sales Employment Agreement is void.

The Sales Employment Agreement states that Durham Geo was "engaged in the business of developing, designing, marketing and selling geotechnical/geoenvironmental instruments and equipment throughout the World." *See* Amended Verified Complaint, Exhibit 1, ¶ 5. Durham Geo was not involved in

installation of its products, nor did it provide monitoring services for the products it sold to its clients. *Id.*; Amended Verified Complaint, ¶ 2, 52.[3] In fact, Durham Geo lists Mr. Trewitz's "major duties" as an employee of Durham Geo in its Amended Verified Complaint, ¶ 35, but nowhere does it list that Mr. Trewitz was responsible for installing, integrating, or monitoring the products he sold. Durham Geo thus has not alleged, nor can it, that it has any interest that warrants preventing Mr. Trewitz from earning a living in Pennsylvania by continuing to perform installation and field monitoring services.

As a result, Mr. Trewitz is entitled to judgment on all claims that arise from the Sales Employment Agreement, including Durham Geo's claim for breach of contract of the Sales Employment Agreement (Count One), claim for declaratory judgment (Count Fourteen), and claim for injunctive relief as to the Sales Employment Agreement (Count Fifteen).

---

[3] Durham Geo alleges that it was engaged in the business of "installation, integration, and service" of the products it sold. *See* Amended Verified Complaint, ¶ 2. The Sales Employment Agreement itself belies that claim by not listing "installation, integration, and service," or similar activities, among the business that Durham Geo engaged in with Mr. Trewitz. *See Long v. Fulton Cnty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011) ("The court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations.").

II.     **Defendant Trewitz is entitled to judgment on the pleadings for all claims arising from the Employee Nondisclosure Agreement because it is unreasonably overbroad and void under Georgia law.**

The Employee Nondisclosure Agreement is also unreasonably overbroad and void under Georgia law because the non-disclosure provisions continue in perpetuity and forbid the use of vastly more information than necessary to protect Durham Geo's interests.  As a result, Mr. Trewitz is entitled to judgment in his favor for all claims arising from the Employee Nondisclosure Agreement.

Whether nondisclosure clauses are reasonable depends on the factors of time and the nature of the business interest sought to be protected. *See Durham v. Stand-By Labor of Georgia, Inc.*, 230 Ga. 558, 563-64, 198 S.E.2d 145, 149-50 (1973), *cited in Manuel v. Convergys Corp.*, 2004 WL 5545025, at *6 (N.D. Ga. Oct. 18, 2004) *aff'd,* 430 F.3d 1132 (11th Cir. 2005).

For instance, the Georgia Supreme Court has ruled that a nondisclosure clause that lacks a reasonable time period and lasts in perpetuity is unenforceable. *See Howard Schyultz & Assoc. v. Broniec,* 239 Ga. 181 (1977). Likewise, a nondisclosure clause is also invalid if it aims to prohibit the disclosure of a vast amount of information, including public information that is not necessary for the protection of the employer's interests. *See Nasco, Inc. v. Gimbert,* 239 Ga. 675, 676 (1977); *see also*, *Glob. Link Logistics, Inc. v. Briles*, 296 Ga. App. 175, 177-78, 674

16

S.E.2d 52, 55 (2009) (voiding a nondisclosure clause that barred the employee from using his "observations" during his tenure in any future employment for an indefinite period of time).

Here, the Employee Nondisclosure Agreement contains non-disclosure provisions last in perpetuity and prohibit even the use of vastly more information than required to protect Durham Geo's interests. For instance, the Employee Nondisclosure Agreement prevents Mr. Trewitz from ever revealing his "know-how . . . except as may be required in the ordinary course of performing my duties as an employee of [Durham Geo]." *See* Amended Verified Complaint, Exhibit 2, ¶ 1. And it further requires that Mr. Trewitz "shall not, after the termination of my employment, *use or permit to be used* any notes, memoranda, reports, lists . . . or *other materials of any nature relating to any matter within the scope of the business of [Durham Geo]*." *Id.* (Emphasis added). These restrictions run in perpetuity. *Id.*

On its face, the Employee Nondisclosure Agreement prevents Mr. Trewitz from ever "using or attempting to use . . . materials of any nature relating to any matter within the scope of the business of Durham Geo." These vague restrictions against disclosure prevent Mr. Trewitz from using any personal knowledge he gathered on his own, including publicly available information that falls within the letter of these restrictions. Just as in *Broniec*, *Nasco*, and *Briles*, where Georgia

courts voided nondisclosure agreements that ran in perpetuity and restricted the use of vastly more information than necessary, including information publicly available, so too are the restrictions here unreasonably overbroad in duration and scope. The nondisclosure provisions in the Employee Nondisclosure Agreement are therefore void and unenforceable.

Because the non-disclosure provisions of the Employee Nondisclosure Agreement are unreasonably overbroad both in duration and scope, the entire Employee Nondisclosure Agreement is void and unenforceable. *See Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1377-78 (N.D. Ga. 2001) ("A single unreasonable provision in a restrictive covenant will void the entire contract, and courts will not "blue line" the covenant to salvage any non-offending parts.") (Citations omitted). As a result, Mr. Trewitz is entitled to judgment on all claims that arise from the Employee Nondisclosure Agreement, including Durham Geo's claim for breach of contract (Count Two), claim for declaratory judgment (Count Fourteen), and claim for specific performance as to the Employee Nondisclosure Agreement (Count Fifteen).

## **CONCLUSION**

Defendant Joshua Trewitz respectfully requests that the Court grant his Motion for Partial Judgment on the Pleadings and enter judgment in his favor on all claims arising from the Sales Employment Agreement and the Employee Nondisclosure Agreement, including Durham Geo's claims for breach of contract (Counts I & II), statutory trover based on the Employee Nondisclosure Agreement (Count XI), declaratory judgment (Count XIV), and for injunctive relief and specific performance (Count XV).

Respectfully submitted, this 30th day of March, 2016.

FELLOWS LABRIOLA, LLP

s/Henry D. Fellows, Jr.
Henry D. Fellows, Jr., Esq.
Georgia State Bar No. 257825

Suite 2300, South Tower              s/Michael Gretchen
225 Peachtree Street, NE              Michael C. Gretchen, Esq.
Atlanta, Georgia 30303               Georgia State Bar No. 522171
404-586-9200 (tel.)
404-586-9201 (fax)
hfellows@fellab.com
mgretchen@fellab.com                 Attorneys for Defendant Joshua Trewitz

## **CERTIFICATE OF FONT AND POINT SELECTION**

Undersigned counsel hereby certifies, pursuant to LR 7.1(D), NDGa, that the foregoing was prepared in Times New Roman, 14 point font, which is one of the font and point selections approved in LR 5.1, NDGa.

*s/ Michael C. Gretchen*
Michael C. Gretchen

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Defendant Joshua Trewitz's Memorandum of Law in Support of Motion for Partial Judgment on the Pleadings* was filed using the Court's CM/ECF system which will automatically send email notification of the filing upon the following counsel of record:

Joseph P. Rockers, Esq.
Bradford J. Smith, Esq.
Nicholas R. Planty, Esq.
Goodwin Procter LLP
53 State Street
Boston, Massachusetts 02109

Robert C. Khayat, Esq.
Khayat Law Firm
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, Georgia 30309

This 30th day of March, 2016.

s/Michael C. Gretchen
Michael C. Gretchen, Esq.